UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOHN M. WALTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00174-JPH-MJD |
| | ) |
| SAFE STEP TUBS OF MINNESOTA, | ) |
| DEBBIE FOSTER Contractor, | ) |
| POWERPAY, | ) |
| BATAVIA BUILDERS, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

John Walters alleges that he suffered injuries from the defective design and negligent installation of a specialty bathtub. Defendants Safe Step Tubs of Minnesota, the bathtub's manufacturer, and Batavia Builders and Debbie Foster, the contractors who installed the bathtub, have filed motions for summary judgment. Dkts. [60], [62]. For the reasons below, those motions are **GRANTED**.

**I.
Facts and Background**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

In November 2021, Mr. Walters entered a Purchase Agreement with Safe Step Tubs of Minnesota, Inc. to purchase a specialty bathtub. Dkt. 60-3 at 2–

3. Safe Step contracted with Batavia Builders and its owner, Debbie Foster ("Batavia Defendants"), for the installation of the Tub. On December 20, 2021, the Batavia Defendants installed the Tub in Mr. Walters' home. Dkt. 60-1 at 141.

The Tub, however, had "a problem with the way" the shower head operates. *Id.* at 132. When Mr. Walters turned the shower on, the telescoping shower head pole would raise and point outside the tub. *Id.* at 76, 78, 84. That would cause water to spray against his bathroom wall and run onto the bathroom floor. *See id.* at 78, 131. To stop the water from spraying outside the Tub, he had to turn the shower off, adjust the telescoping pole, then turn the shower back on. *Id.* at 78–79. Mr. Walters never read the Tub's instruction manual or asked anyone about it. *Id.* at 192.

Mr. Walters used the Tub to shower twice, falling on the bathroom floor each time. *Id.* at 87. Shortly after the Tub's installation, Mr. Walters fell after exiting the Tub for the first time. *Id.* at 72. While he was showering, he "had to fight" with the shower head, which was spraying water against the bathroom wall for "about a minute and a half." *Id.* at 76, 78, 84. He turned the water off, readjusted the shower head, then turned the water back on. *Id.* at 78–79. He then stepped onto the ceramic tile floor, which was wet and not covered by a bath mat, with his feet still wet from the shower. *Id.* at 80–81, 87. Mr. Walters acknowledged that he knew bathrooms can be slippery at times, and before the Tub's installation he had previously fallen while getting out of a bathtub. *Id.* at 88–89. Despite this, he did not look at the ground before he got out of the Tub.

*Id.* at 88.  He slipped and fell, hitting his elbow on the Tub and his head and neck on the wall.  *Id.* at 82.

The next day, he fell again after using the Tub in an "almost identical" sequence of events.  *Id.* at 86, 89.  He stepped out of the Tub after the shower head had sprayed water against the wall, turned to grab a towel, then fell on the wet ceramic tile floor.  *Id.* at 89–90.

In March 2023, Mr. Walters filed his amended complaint.  Dkts. 33, 33-1.  He alleges that Safe Step sold him a defective Tub and that Safe Step and the Batavia Defendants negligently installed the Tub.  *Id.*  Defendants moved for summary judgment.  Dkts. 60, 62.

In response, Mr. Walters filed a 2-page document that neither contests any of Defendants' factual assertions nor addresses any of Defendants' legal arguments.  Dkt. 64.  Therefore, the Court treats the Defendants' supported factual assertions as uncontested and assesses whether Defendants are entitled to judgment as a matter of law.  *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp.*

3

*v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019). Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III. Analysis

#### A. Safe Step

Mr. Walters alleges two claims against Safe Step.[1] One is a products liability claim that Safe Step sold him a defective Tub. *See* dkt. 33, 33-1; *see*

---

[1] Safe Step also discussed breach of contract claims in its brief because "Mr. Walters indicated during his deposition that he nonetheless continues to advance a breach of contract claim against SafeStep." Dkt. 61 at 6 n.4. Mr. Walters's summary judgment response also appears to argue a breach of contract claim as he states that his wife did not sign the Purchase Agreement, and he "cannot say for sure" whether he signed it. *See* dkt. 64 at 2. Regardless, the only claims before the Court now are those stated in Mr. Walters's amended complaint, as construed by the Court's screening order—he cannot use his summary judgment response or deposition to state additional claims. *See Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999) ("Once the amended complaint was filed . . . it became the governing document in the case and any

4

*also* dkt. 35 at 1. The other is a claim that the contractor Safe Step hired negligently installed the Tub. *Id.*

The Indiana Products Liability Act ("IPLA") governs all actions "(1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product." Ind. Code § 34-20-1-1. The IPLA therefore applies to both of Mr. Walters's claims against Safe Step, regardless of how the claims are characterized or how the legal theory underlying the claims is described. *See id.*; *Robinson v. Davol Inc.*, 913 F.3d 690, 693 (7th Cir. 2019); *McClellon v. Thermo King Corp.*, No. 1:11–cv–01337–SEB–MJD, 2013 WL 6571946, at *4 n.2 (S.D. Ind. Dec. 13, 2013) (finding negligent installation claim against manufacturer "must stand or fall within the rubric provided by the IPLA" when installation was incidental to sale of product).

To establish liability under the IPLA, a plaintiff must show that "'(1) he or she was harmed by a product; (2) the product was sold 'in a defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a

---

allegations . . . not brought forward fell by the wayside."); *see also Thomas v. Carmichael*, No. 2:21-cv-160-JRS-MKK, 2023 WL 5116599, at *2 (S.D. Ind. July 24, 2023) (explaining plaintiff could not amend his complaint to state new claims in his summary-judgment response brief or his deposition (citing *Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012)). The Court's screening order allowed Mr. Walters to proceed with products liability and negligence claims. *See* dkt. 35 at 1. Since these were the only claims identified in the screening order and Mr. Walters did not seek reconsideration of that order, Mr. Walters's tort claims are the only claims in this case. Moreover, to the extent Mr. Walters contends that he set forth a breach of contract claim, any such claim would also be subsumed into his products liability claim, *see infra*, because he seeks to recover damages only for tort-based personal injuries. *See Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009) (noting Indiana Court of Appeals and federal district courts sitting in Indiana have held "tort-based breach-of-warranty claims have been subsumed into [IPLA]"); *Hathaway v. Cintas Corp. Servs., Inc.*, 903 F. Supp. 2d 669, 672–73 (N.D. Ind. 2012) (holding plaintiff's tort-based express and implied warranty claims were subsumed into IPLA claim).

foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold." *Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015); Ind. Code § 34-20-2-1.  A product is "unreasonably dangerous" when "the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases the product with the ordinary knowledge about the product's characteristics common to the community of consumers."  Ind. Code § 34-6-2-146.  This standard "focuses on the reasonable expectations of the consumer," *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1014 (7th Cir. 2020) (quoting *Gresser v. Dow Chem. Co.*, 989 N.E.2d 339, 345 (Ind. Ct. App. 2013)), which contemplates factors such as "the reasonably anticipated knowledge, perception, appreciation, circumstances, and behavior of expected users," *id.* at 1008 (quoting *Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 440–41 (Ind. 1990)).

A plaintiff can establish that a product is defective by showing a manufacturing defect, a design defect, or a failure to warn of dangers in the product's use.  *Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019).  Mr. Walters does not state explicitly which theory he is pursuing here.  *See* dkts. 33, 33-1.  Safe Step understands Mr. Walters to allege a design defect theory, dkt. 61 at 10–12, and Mr. Walters does not respond otherwise, dkt. 64.  Therefore, the Court analyzes Mr. Walters's claim under a design defect theory.  So, the relevant question is whether the Tub's telescoping shower head design

6

was unreasonably dangerous, as measured against the reasonable expectations of a bathtub consumer.

Safe Step argues that it is entitled to summary judgment because Mr. Walters designates no evidence from which a jury could find that the Tub's design was unreasonably dangerous.[2]  Dkt. 61 at 10–12.  That's because, Safe Step argues, "[i]t is not at all clear how the presence of a movable shower head creates an unreasonably dangerous condition."[3]  *Id.* at 11.  And Safe Step further argues that Mr. Walters could not have shown the Tub's design is unreasonably dangerous since he did not read the Tub's instruction manual, ask anyone about it, or designate an expert witness.  *Id.*

Mr. Walters designates no evidence in response.  *See* dkt. 64.  He argues that "Safe Step Tubs hired Contractors Batavia Builders, and they hired the subcontractors who did the installation, so this fact alone makes them responsible."  *Id.* at 2.  But those arguments do not address whether the Tub's design is "unreasonably dangerous."

It's undisputed at summary judgment that the telescoping shower head pole would raise and turn during use, and that use of the Tub resulted in water spraying outside the Tub.  Dkt. 60-1 at 76, 78, 84.  But Mr. Walters designates

---

[2] Safe Step argues that during Mr. Walters's deposition, he abandoned any claims that leaking under the Tub door or having to enter the Tub sideways also constituted defective designs.  Dkt. 61 at 5–6 (citing dkt. 60-1 at 46–47, 132).  The Court agrees.

[3] To the extent Safe Step argues that Mr. Walters had to offer a reasonable alternative design, he did not need to do so.  *See Kaiser*, 947 F.3d at 1013 ("The Indiana Supreme Court has spoken clearly and unequivocally: the IPLA does *not* require evidence of a reasonable alternative design to establish design-defect liability.").

7

no evidence from which a reasonable jury could conclude a shower head that unexpectedly raises and turns during use "exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer." Ind. Code § 34-6-2-146. Further, Mr. Walters designates no evidence from which a reasonable jury could conclude that a reasonable bathtub consumer would not anticipate a slick bathroom floor after taking a shower. Therefore, a reasonable jury could not conclude from the designated evidence that the Tub's design was unreasonably dangerous. *See Moss v. Crosman Corp.*, 136 F.3d 1169, 1175 (7th Cir. 1998) (rejecting claim that BB gun was unreasonably dangerous when it "did not place users at risk of injuries different in kind from those that an average consumer might anticipate"). Accordingly, Safe Step is entitled to summary judgment on Mr. Walters' products liability claim.[4]

### B. Batavia Defendants

Mr. Walters also asserts a negligence claim against the Batavia Defendants, alleging they negligently installed the Tub. *See* dkts. 33, 33-1; *see also* dkt. 35 at 1. Batavia Defendants argue that Mr. Walters has not established that its acts or omissions were the proximate cause of Mr. Walters's injuries. Dkt. 63 at 3. They also argue that they prevail as a matter of law

---

[4] Safe Step also argues that the incurred risk doctrine bars Mr. Walters's claim against it. Dkt. 61 at 12–15. However, because Mr. Walters does not establish the prima facie elements of an IPLA claim, the Court need not address whether the incurred risk doctrine applies here.

under the comparative fault doctrines of contributory negligence and incurred risk. *Id.* at 3–4.

A plaintiff asserting a negligence claim must show "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach." *Evansville Auto., LLC v Labno-Fritchley*, 207 N.E.3d 447, 454 (Ind. Ct. App. 2023). "An indispensable element of a negligence claim is that the act complained of must be the proximate cause of the plaintiff's injuries." *Bader v. Johnson*, 732 N.E.2d 1212, 1218 (Ind. 2000). "A negligent act is the proximate cause of an injury if the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated." *Id.*

The proximate cause element is not established when the chain of causation is broken by a superseding or intervening cause. *Control Techs., Inc. v. Johnson*, 762 N.E.2d 104, 107 (Ind. 2002). "The doctrine of superseding or intervening causation . . . provides that when a negligent act or omission is followed by a subsequent negligent act or omission so remote in time that it breaks the chain of causation, the original wrongdoer is relieved of liability." *Id.* Usually, questions of proximate cause are questions of fact for the jury. *Id.* But in "plain and indisputable cases" where "only a single inference or conclusion can be drawn," issues of proximate cause and intervening cause may be decided as a matter of law. *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004).

In their causation arguments, the Batavia Defendants reference both the prima facie element of proximate cause and the affirmative defense of comparative fault. "[T]hese inquiries are two sides of the same coin." *Brown v. Costco Wholesale Corp.*, No. 1:21-cv-02668-SEB-MJD, 2023 WL 348220, at *8 n.5 (S.D. Ind. Jan. 20, 2023). "Under the Indiana Comparative Fault Act, the legal requirements of proximate causation apply to both fault as the basis for liability, and the affirmative defense or contributory fault on behalf of the plaintiff." *Id.* (citing Ind. Code § 34-51-2-3; *Control Techs.*, 762 N.E.2d at 109). "To say there is a 'superseding cause' foreclosing one actor's liability is to say that the superseding event was not reasonably foreseeable to that actor. This is simply another way of saying, in comparative fault terms, that the original actor did not cause the harm and receives zero share of any liability." *Control Techs.*, 762 N.E.2d at 109. This means the proximate cause and comparative fault "inquiries are properly conducted in conjunction with one another." *Brown*, 2023 WL 348220, at *8 n.5. The Batavia Defendants primarily frame their arguments in terms of the comparative fault doctrines of contributory negligence and incurred risk. Dkt. 63 at 3–4. So, the Court's analysis proceeds in those terms, too.

"Indiana has adopted, in most tort cases, a comparative negligence scheme whereby the negligence of a plaintiff, which contributed to the complained-of injury, does not of itself afford a complete defense to liability for a defendant." *Kader v. State, Dep't of Corr.*, 1 N.E.3d 717, 728 (Ind. Ct. App. 2013) (citing Ind. Code § 34–51–2–1 *et seq.*). Accordingly, under Indiana's

Comparative Fault Act, neither contributory negligence nor incurred risk are complete defenses. *See, e.g., id.* (contributory negligence); *Star Transport, Inc. v. Byard*, 891 N.E.2d 1099, 1105 (Ind. Ct. App. 2008) (incurred risk). Instead, if a plaintiff's actions also contributed to his injuries, the comparative fault among the parties must be apportioned. *See Zambrana v. Armenta*, 819 N.E.2d 881, 889 (Ind. Ct. App. 2004).

Typically, "the apportionment of fault is uniquely a question of fact to be decided by the fact-finder." *Evansville Auto.*, 207 N.E.3d at 455 (internal quotations omitted). But "when there is no dispute in the evidence and the fact-finder is able to come to only one logical conclusion, the apportionment of fault becomes an issue of law solely for the court." *Id.* (cleaned up). And "[i]f the percentage of fault of the claimant is greater than fifty percent (50%) of the total fault involved in the incident which caused the claimant's . . . injury . . . , the jury shall return a verdict for the defendant." Ind. Code § 34-51-2-7(b)(2). So, for the Batavia Defendants to prevail at summary judgment, the relevant question is whether a reasonable jury could conclude Mr. Walters was no greater than fifty percent at fault for his injuries.

Here, the undisputed designated evidence shows that each time he slipped and fell when getting out of the Tub, Mr. Walters knew or should have known the bathroom floor was wet but proceeded anyways. The Tub's shower head sprayed water against the bathroom wall for "about a minute and a half." Dkt. 60-1 at 76, 78, 84. He turned the water off, readjusted the shower head, then turned the water back on to finish his shower. *Id.* at 78–79. Without

11

looking at the ground before getting out of the Tub, *id.* at 88, Mr. Walters then stepped with his wet feet onto the wet ceramic tile floor, which was not covered by a bath mat. *Id.* at 80–81, 87.

By letting water spray onto the floor for a minute and a half then finishing his shower, Mr. Walters had ample time to check whether his bathroom floor was slick. *See Lin v. Sheraton License Operating Co.*, No. 1:18-cv-02158-JPH-DML, 2020 WL 6274839, at *4 (S.D. Ind. Oct. 26, 2020) (noting it was "long enough for a reasonable guest to see any standing water and recognize any danger associated with it" when plaintiff "showered, lathered up with soap, rinsed, and dried off before he slipped and fell"). And common experience would suggest that a ceramic tile floor is more slippery when wet. *Cf. Lincoln Operating Co. v. Gillis,* 114 N.E.2d 873, 876 (Ind. 1953) ("[I]t is a matter of common experience that water makes an enamel or porcelain tub more slippery than a dry tub . . . .").

Mr. Walters also had specific knowledge about the risks of wet bathroom floors and exiting bathtubs. He acknowledged in his testimony that he knew bathrooms can be slippery at times. Dkt. 60-1 at 88. And he testified that before the Tub's installation, he had previously fallen while getting out of other bathtubs. *Id.* at 88–89. But despite all of this, Mr. Walters did not look down at his wet bathroom floor before he stepped onto it and slipped. *Id.* at 88.

Taken all together, the designated evidence allows only one conclusion—that Mr. Walters was more than fifty percent at fault as a matter of law for the injuries he sustained when he slipped on the wet bathroom floor as he got out

12

of the shower.  *See Evansville Auto.*, 207 N.E.3d at 455–56 (apportioning fault as matter of law at summary judgment when decedent used cutting torch to cut top off metal drum previously containing flammable liquid with conspicuous warning label and decedent had specific knowledge from his work and training that doing so can cause an explosion); *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 529 (Ind. Ct. App. 2004) (apportioning fault as matter of law at summary judgment when plaintiff testified he knew of specific risks associated with using metal tarp frame on truck near power lines); *cf. Lin*, 2020 WL 6274839, at *4 ("The danger from undrained water constitutes an obvious risk." (cleaned up)).  Accordingly, the Batavia Defendants are entitled to summary judgment.

## IV. Conclusion

Safe Step and Batavia Defendants' motions for summary judgment, dkt. [60] and [62], are **GRANTED**.  Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 3/18/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOHN M. WALTERS
950 E. Dawn Dr.
Terre Haute, IN 47802

POWERPAY
PO Box 62426
King of Prussia, PA 19406-0395

All electronically registered counsel